**POTOMAC ELECTRIC POWER CO., a corporation, Plaintiff,**

v.

**WASHINGTON CHAPTER OF the CONGRESS OF RACIAL EQUALITY and Julius W. HOBSON, its Chairman or President, Defendants.**

No. 3238-62.

United States District Court
District of Columbia.

Oct. 18, 1962.

Thomas A. Flannery, Cornelius Means, and Stephen A. Trimble, Washington, D. C., for plaintiff.

Richard J. Scupi and Hal Witt, Washington, D. C., for defendants.

HOLTZOFF, District Judge.

This case is before the Court at this time on a motion of the defendants to vacate a temporary restraining order heretofore issued.

The salient facts are as follows. Plaintiff, Potomac Electric Power Company, is a public utility furnishing electric light and power in the City of Washington and its environs. The defendant, Washington Chapter of the Congress of Racial Equality, is an organization which is apparently devoted to the purpose of procuring certain economic, social and other advantages for members of the colored race. It has issued or is about to issue and distribute a series of stamps bearing the legend, "We Believe In Merit Hiring," and requesting the recipients of these stamps to affix them to bills issued by the Potomac Electric Power Company when its customers pay those bills. It further appears that the plaintiff issues its bills on cards containing certain apertures for use in calculating and computing machines and that if these stamps should be pasted on these bills some of the apertures may be cov-

ered, making it impossible for the bills, when they are returned, to be passed through the computing machines, thereby completely disrupting the billing operations of the plaintiff, which obviously must be carried on on a big scale.

In other words, what the defendant proposes to do is to ask people to deface the plaintiff's property and to frustrate and render impracticable the operation of machinery owned by the plaintiff. This is akin to a minor form of sabotage. It certainly has no connection with the desire of the defendant that members of the race whom it purports and professes to represent should be hired as employees of the plaintiff.

This action is brought to enjoin and restrain the activity to which reference has been made and this Court has issued a temporary restraining order to that end. The facts are not denied, but it is claimed in support of the motion that the action involves a labor dispute. It is further claimed that the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., applies, and that the temporary restraining order does not comply with its requirements.

■ The Court is of the opinion that the Norris-LaGuardia Act does not apply to the situation here presented, irrespective of whether there is or is not a labor dispute between the plaintiff and the defendant, because the activity to which this action is directed is not a legitimate activity connected with a labor· dispute. For that reason, the defendant's reliance on the decision of the Supreme Court in New Negro Alliance v. Sanitary Grocery Co., 303 U.S. 552, 58 S.Ct. 703, 82 L.Ed. 1012, is not well founded.

In that case, as was stated by Mr. Justice Roberts in his opinion for the majority of the Supreme Court, at page 559, 58 S.Ct. 703, 82 L.Ed. 1012, the enjoined organization engaged in causing pickets to patrol in front of a grocery store with a placard urging Negroes not to patronize the store because no Negroes were employed there. The Court emphasized that:

"The patrolling did not coerce or intimidate respondent's customers; did not physically obstruct, interfere with, or harass persons desiring to enter the store, the picket acted in an orderly manner, and his conduct did not cause crowds to gather in front of the store."

The Court, in the concluding portion of its opinion, on page 562, 58 S.Ct. 703, 82 L.Ed. 1012, indicated that the Norris-LaGuardia Act was intended to prevent the issuance of injunctions against legitimate activities in connection with a labor dispute. The Court stated:

"It was intended that peaceful and orderly dissemination of information by those defined as persons interested in a labor dispute concerning 'terms and conditions of employment' in an industry or a plant or a place of business should be lawful; that, short of fraud, breach of the peace, violence, or conduct otherwise unlawful, those having a direct or indirect interest in such terms and conditions of employment should be at liberty to advertise and disseminate facts and information with respect to terms and conditions of employment, and peacefully to persuade others to concur in their views respecting an employer's practices."

If the defendant's activities in this instance were limited to those summarized by Mr. Justice Roberts in the New Negro Alliance case, this temporary restraining order would not have been issued.

■ The Norris-LaGuardia Act does not apply to injunctions to prevent the commission of crime or sabotage or destruction or injury to property. It relates to legitimate activities of labor unions, such as picketing and, at times, boycotting and dissemination of information in the exercise of the Constitutional right of freedom of speech.

The Court is of the opinion, therefore, that this action is not within the Norris-LaGuardia Act.

All that the defendant would do if the threat is carried out would be to urge persons to deface property belonging to the plaintiff and, as a consequence, block

the use of machinery employed by the plaintiff in its billing operation. It is mischief for mischief's sake.

The Court will, therefore, deny the motion to vacate the temporary restraining order.

The Court wishes to add, however, that even if the Norris-LaGuardia Act applied, the Court would make the findings of fact required by that Act, and, therefore, the Court will amend its temporary restraining order to comply in form with the requirements of that Act, irrespective of whether it is applicable or not, and counsel will submit an amended order accordingly.